IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH E. CAIN, | ) | CASE NO. 1:05 CV 2378 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| JOHN E. POTTER, Postmaster General, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before the Court[1] is a motion for summary judgment by defendant John E. Potter,

United States Postmaster General, in this action filed by Kenneth E. Cain alleging retaliatory

employment actions in violation of Title VII of the Civil Rights Act of 1964.[2]  Cain asserts

that, while he was employed at the Cleveland, Ohio, Processing and Distribution Center of

the United States Postal Service, he was denied job-related training, thus keeping him from

qualifying for a promotion, in retaliation for making an EEO complaint about an earlier

promotion examination.[3]  The Postal Service argues that the supervisor who denied Cain the

---

[1] The parties have consented to the exercise of jurisdiction by the Magistrate Judge.
ECF # 14.

[2] 42 U.S.C. § 2000e-3.

[3] ECF # 21 at 1.

requested training had no knowledge of Cain's EEO complaint at the time he disapproved Cain's request for additional training, thus precluding a finding of retaliation.[4]

Cain's present claim for relief – the single issue stated above – has emerged as the briefing and oral argument on this motion have pruned away Cain's other previous arguments.[5]  Accordingly, given the claim now before the Court and upon consideration of the arguments advanced in the briefs[6] and at the oral argument,[7] the Court finds that the motion for summary judgment of the Postal Service is well-taken and grants it summary judgment for the reasons that follow.

## Facts

The relevant facts were found by the EEO investigator of Cain's consolidated retaliation claims and are not here in dispute.[8]

Cain was working at the Cleveland postal facility in December, 2002, as a Building Equipment Mechanic, Level 5 (BEM-PS 5) employee when he sought a promotion to

_____

[4] ECF # 22 at 2-6.

[5] A claim of retaliation for changing the work days on a job for which Cain hoped to apply was explicitly dropped.  ECF # 21 at 2.  The claim that Cain was not promoted despite allegedly having passed the entrance examination, *see*, ECF # 1 at ¶¶ 4, 5, 7, has been implicitly dropped.  ECF # 21 at 1.  Cain acknowledged during oral argument that his present case consists of a single claim.

[6] ECF # 19 [Postal Service's motion for summary judgment]; ECF # 21 [Cain's brief in opposition]; ECF # 22 [Postal Service's reply brief].

[7] The parties participated in oral argument before the Court on October 24, 2006.

[8] ECF # 19, Attachment A – EEO Investigation Report of June 7, 2004.

BEM-PS 8.[9] On December 11, 2002, Cain took the required test to qualify for the BEM-PS 8 position but failed to pass two sections of that test.[10] Cain disputed the results of the test and requested that the grading be reviewed for errors.[11] After conducting such a review, the Postal Service concluded that there were no scoring errors and that Cain had not passed.[12]

On April 4, 2003, Cain again took the qualifying examination for promotion to BEM-PS 8.[13] Again, he failed to pass.[14] On April 10, Cain promptly filed an informal EEO complaint with the Postal Service claiming that he had actually passed the test but was denied consideration for the promotion due to impermissible discrimination due to age and national origin.[15] Cain's complaint named Plant Maintenance Manager Kim Dellinger and Maintenance Manager William Gehalo as the parties who took the action.[16] Although

---

[9] *Id.* at 4.

[10] *Id.*, Attachment D – Letter of April 23, 2003 from Postal Service's National Test Administrative Center to Cain.

[11] *Id.*

[12] *Id*.

[13] *Id.*, Attachment E – Postal Service rating summary for Kenneth Cain for examination taken April 4, 2003.

[14] *Id.*

[15] *Id.*, Attachment F – information for pre-complaint counseling submitted by Kenneth E. Cain on April 10, 2003. As noted, Cain no longer asserts claims based on age or national origin.

[16] *Id.*

Gehalo was not present at the unsuccessful mediation,[17] Cain has asserted that Gehalo was likely aware that he was named in the discrimination complaint and that he informed Philip Fulgenzi, who later became Cain's immediate supervisor, that Cain had made an EEO complaint.[18]

However, Fulgenzi's sworn affidavit given as part of the later formal EEO investigation states that he first learned of this complaint[19] when he was requested to appear at a mediation conference in July 2003[20] and had "never" been involved in any prior EEO activities involving Cain.[21] Gehalo's sworn affidavit states that he did not know of the complaint until "early 2004" when he asserts that Cain offered to drop the complaint in exchange for "making a deal" with him and Dellinger.[22]

Beginning May 5, 2003, Cain was provided two weeks of training by the Postal Service at its National Employee Development Center in Oklahoma.[23] Upon his return to

---

[17] *See*, ECF #21, Ex. 4 which notes that Dorothy Best was the party representing the postal service at the mediation.

[18] *See*, ECF #19, Attachment H [excerpts from September 20, 2004 deposition testimony of Kenneth Cain] at 16. "I can't speculate about what his [Fulgenzi's] knowledge was or what have you. But I knew at that time [of the April 10 EEO complaint] that they [Fulgenzi and Gehalo] went out of protocol, that they were coaxing [coaching] each other...."

[19] Identified in the EEO investigative affidavit questions as being Cain's April 10, 2003 complaint. *Id.*, Attachment I at 2, ¶ 16.

[20] *Id.* at 5, ¶ 15.

[21] *Id.* at ¶ 16.

[22] *Id.*, Attachment O [investigative affidavit of William Gehalo] at ¶ 23.

[23] *Id.*, Attachment G – training record of Kenneth Cain.

-4-

Cleveland, Cain  appeared at work on May 19 while still on vacation and asked for still more training.[24]  Fulgenzi, who had just been told he would be Cain's supervisor that day, denied that request that same day.[25]  On May 23, Cain elevated his previous informal complaint about his second failure on the qualifying test to a formal one.[26] It was received at the Cleveland district office of the Postal Service on May 27.[27]

On July 1, 2003, Cain made a new charge against the Postal Service.  He filed another informal complaint alleging discrimination and retaliation with respect to the May 19th decision by his supervisor to deny him additional training.[28] He later upgraded this charge to a formal complaint.[29]

On August 20, 2003, Cain received additional training from the Postal Service, although not the program he had originally requested.[30]  Early the next year, from February 24, 2004 to March 11, 2004, Cain did receive the training he had previously been

---

[24]  *Id*., Attachment H at 15-16 – excerpts from September 20, 2004 deposition testimony of Kenneth Cain; Attachment I at 3-4 – EEO Investigative Affidavit of Philip Fulgenzi.

[25] *Id.*, Fulgenzi affidavit at ¶ 4.

[26] *Id.*, Attachment J – EEO complaint of Kenneth Cain dated May 23, 2003.

[27] *Id.*

[28] *Id.*, Attachment N – Information for pre-complaint counseling dated July 1, 2003.

[29] *Id*., Attachment P – Discrimination complaint dated August 27, 2003.

[30] *Id.*, Attachment G – Training records of Kenneth Cain.

denied.[31]  On April 2, he took the qualifying test for BEM-PS 8 for a third time and passed.[32]

Within two weeks, Cain dropped all claims against the Postal Service except his retaliation

claims.[33]  On June 12, 2004, Cain was officially promoted to BEM-PS 8.[34]

Cain's retaliation claims – both as to his failure in the second qualifying test and the

denial of his request for additional training in May of 2003 – were decided by an

administrative law judge on July 26, 2005 in favor of the Postal Service on a motion for a

decision without a hearing.[35]  Cain filed the present action in federal court on October 7,

2005.[36]

In this matter, Cain initially reiterated the claims he previously presented and lost as

formal EEO complaints.[37]  However, as previously noted, Cain has now stated his remaining

allegations as a single claim.  Specifically, he contends that the Postal Service retaliated

---

[31] *Id.*

[32] *Id.*, Attachment R – Incraft rating summary dated May 6, 2004 for test given to Kenneth Cain on April 2, 2004.

[33] *Id.*, Attachment V – April 15, 2004 e-mail from Michael Conway to Richard Moore re: Cain v. USPS.

[34] *Id.,* Attachment C – excerpt from July 24, 2006 deposition testimony of Kenneth Cain.

[35] *Id.*, Attachment S – decision of the administrative law judge; Attachment T – notice of final action by the Postal Service.

[36] ECF # 1.

[37] As previously noted, charges of retaliation in changing work day assignments in a job Cain planned to apply for and in improperly calculating Cain's score in the second qualifying test for the promotion to BEM-PS 8 are no longer part of this case.

against him for making EEO complaints on April 10 and May 27, 2003 by refusing to grant him training necessary for a promotion on May 19.[38]

However, it is important to note that Cain's is not here resurrecting his previous complaint that the April 4 test was improperly graded.  Rather, Cain argues that it is the fact that he made a formal EEO complaint on May 27, not the substance of that complaint, that now must be seen as the protected activity that motivated the Postal Service to retaliate against him by denying his request for additional training on May 19.[39]  Cain further asserts that, for purposes of this motion, the Court must infer that the Postal Service knew that denying this training would "prevent [Cain] from passing the KSA [knowledge, skills and abilities] promotional exam and hence keep [Cain] from being promoted...."[40]  In addition,

---

[38] *Id*. at 1.  Cain has contended that the protected activity giving rise to his retaliation claim was both his April 10, 2003 informal complaint and his May 27, 2003 formal complaint. *See*, ECF # 21 at 5.  "...Plaintiff was denied school training needed to pass the BEM-8 test <u>about a month and a half after Plaintiff filed his EEOC REDRESS demand for charge No. 1C 441-0082-3 and after the Plaintiff accused the Defendant of discrimination and retaliation</u>." (Emphasis in original.)  For purposes of this motion, both purported bases for retaliation will be examined.  In addition, Cain has at various times appeared to assert that the denial of training actually took place on May 27, the same day as the Cleveland district of the Postal Service received his formal EEO complaint. Cain's own sworn deposition testimony states that he was denied training on May 19, not on May 27.  ECF # 19, Attachment H – September 20, 2004 deposition testimony of Kenneth Cain at 15-16.  This is also the sworn affidavit testimony of Philip Fulgenzi.  ECF # 19, Attachment I at ¶¶ 2, 4. Given the uncontroverted evidence of record that Cain asked for the training and was refused on May 19, not May 27, the Court must consider that date to be established for purposes of this motion.

[39] ECF # 21 at 5.

[40] *Id*. at 3.

he argues that his supervisor, Philip Fulgenzi, who actually denied the training must be imputed to have had constructive notice of his prior EEO complaint.[41]

As noted, the Postal Service maintains that there is no evidence that Cain's immediate supervisor who denied the training – Philip Fulgenzi – knew of Cain's EEO complaint at the time he denied Cain's request.  Indeed, the Postal Service points to the uncontroverted EEO investigative affidavit of Fulgenzi in which he explicitly denies that he was aware of Cain's prior EEO activities on May 19, 2003 when he denied Cain's request for additional training.[42] The Postal Service contends that the lack of proven knowledge of any protected activity by the decision-maker prior to the alleged adverse employment action is fatal to a claim of retaliation.[43]  Cain asserts that knowledge of his April 10 informal complaint must be imputed to Fulgenzi since Fulgenzi's superiors and some co-workers, particularly William Gehalo, at the Postal Service knew of that EEO complaint.[44]

---

[41] This is relevant only to the claim that Fulgenzi knew of the April 10 informal complaint.  As stated, Cain's May 27 formal EEO complaint occurred after Fulgenzi denied Cain's request for additional training on May 19.  Any knowledge by Fulgenzi of the May 27 formal complaint is thus not relevant to whether his May 19 decision to deny training could have been retaliatory.

[42] ECF # 19, Attachment # 9 – EEO Investigative Affidavit of Philip Fulgenzi at questions 15-17.

[43] ECF # 22 at 3-4.

[44] *See*, ECF # 21 at 6.

## Analysis

### A.     Standard of review – summary judgment

The standard for evaluating a motion for summary judgment is well-known. Summary judgment is appropriate where the court finds "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[45] The burden of showing the absence of any such genuine issue of material fact is with the moving party.[46] The motion must be evaluated in the light most favorable to the party opposing it.[47]

Determination as to whether there is a genuine issue of material fact requires application of relevant evidentiary standards to the material offered by each party.[48] In particular, the nonmoving party may not rely on the mere allegations of the pleadings or upon denials, but must "produce evidence that results in a conflict of material facts to be solved by a jury."[49]

The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case.[50] "The 'mere possibility' of a factual dispute

---

[45] Fed. R. Civ. P. 56(c).

[46] *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

[47] *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[48] *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

[49] *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

[50] *Celotex,* 477 U.S. at 322.

is not enough."[51]  The party bearing the burden of proof must present evidence on which a jury could reasonably find in its favor at trial.[52]

As stated recently by the Sixth Circuit, summary judgment affords the movant the opportunity to "challenge the opposing party to 'put up or shut up' on a critical issue."[53]

## B.  Standard of review – retaliation

In *Mulhall v. Ashcroft*,[54] Sixth Circuit reiterated the rule that, to establish a prima facie case of Title VII retaliation, a plaintiff must establish four elements:

> (1) plaintiff engaged in an activity protected by Title VII; (2) plaintiff's exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.[55]

The *Mulhall* court further stated that "[s]ummary judgment is proper where the plaintiff fails to present evidence sufficient to create a dispute of material fact with respect to an element of his retaliation claim."[56]

---

[51] *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

[52] *Liberty Lobby*, 477 U.S. at 252.

[53] *BDT Products, Inc. v. Lexmark Int'l*, 124 F. App'x 329, 331 (6th Cir. 2005).

[54] *Mulhall v. Ashcroft,* 287 F.3d 543 (6th Cir. 2002).

[55] *Id.* at 551, quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997).

[56] *Id.*

To meet the second element of the rule, the Sixth Circuit is clear that the plaintiff must be able to establish that "the individuals charged with taking the adverse employment action knew of the protected activity."[57]

While, "in most Title VII cases the plaintiff will be able to produce direct evidence that the decision making officials knew of the plaintiff's protected activities,"[58] the lack of such direct evidence is not necessarily fatal if circumstantial evidence can establish this element of the claim.[59] However, that circumstantial evidence must be more than the challenged adverse action itself.[60] Similarly, it cannot be the mere temporal proximity of the adverse employment action to the protected activity.[61]  And where "the decision maker denies having knowledge of the alleged protected activity, the plaintiff must do more than 'offer[] only conspiratorial theories ... or "flights of fancy, speculations, hunches intuitions or rumors.'"[62]

---

[57] *Id*. at 552, citing *Fenton v. HiSAN, Inc*., 174 F.3d 827, 832 (6th Cir. 1999).

[58] *Id.*

[59] *Id*., citing *Allen v. Michigan Dep't of Corrs.*, 165 F.3d 405, 413 (6th Cir. 1999).

[60] *Id.* at 553.

[61] *Id*. at 551.  Temporal proximity may, when coupled with other factors, be sufficient to create circumstantial evidence to establish the fourth prong – causality – of the four part test for retaliation (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 567 (6th Cir. 2000)), but does not permit a jury to make any inference as to the second element of the test – that the decision maker "*knew or was aware of [plaintiff's] protected activity.*" (Emphasis in original).

[62] *Proffitt v. Metro. Gov't of Nashville & Davidson County*, 150 F. App'x 439, 443 (6th Cir. 2005), quoting *Mulhall*, 287 F.3d at 552 (quoting *Visser v. Packer Eng'g Assocs., Inc*., 924 F.2d 655, 659 (7th Cir. 1991) (en banc)).

-11-

In sum, "[w]here a decision-maker accused of retaliation lacked actual knowledge that the plaintiff employee engaged in Title VII protected activity, then the defendant employer cannot be held liable for retaliation under Title VII."[63]

## C. Cain has not established that, on May 19 when Fulgenzi denied Cain's request for additional training, Fulgenzi had actual knowledge of Cain's April 10 EEO complaint and thus Cain cannot make a prima facie case of impermissible retaliation.

Here, the Court notes that filing an EEO complaint is well-recognized as being a protected activity within the meaning of Title VII.[64] Moreover, the Court assumes without deciding that Fulgenzi's May 19, 2003 denial of the training request was an adverse employment action within the meaning of the statute.[65] In addition, the Court further assumes, for purposes of the present motion for summary judgment, that the denial of training within two months of Cain's informal EEO complaint about the scoring of his promotion examination is sufficient circumstantial evidence of causality to survive the present motion.

---

[63] *Sealy v. TVA*, 340 F. Supp. 2d 832, 841 (E.D. Tenn., 2004), citing *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1156 (11th Cir. 2002); *Mulhall*, 287 F.3d at 551-54; *see also*, *Clark County School Dist. v. Breeden*, 532 U.S. 268, 272-73 (2001).

[64] *See*, 42 U.S.C. § 2000e-3(a), which prohibits an employer from discriminating against any employee because he "made a charge" under this statute.

[65] There is some dispute as to whether this particular training class was necessary to permit Cain to re-take the promotional examination that he failed or whether he qualified for re-examination on other grounds, thus making re-examination and promotion not dependent upon being authorized to enroll in this additional training. The Court here does not reach this issue.

The record here also establishes that Philip Fulgenzi is the sole official who made the decision to deny Cain the training he requested on May 19. Both the affidavits of Fulgenzi and Cain are consistent on that point, as they both are as to the date when the training was denied. In addition, as previously noted, the only direct evidence of record as to what Fulgenzi knew of Cain's April 10 EEO complaint at the time he denied Cain's request for additional training is Fulgenzi's sworn testimony to the EEO investigator that he knew nothing about that complaint at the time. Accordingly, the only issue remaining for the Court in addressing this motion is whether Cain has provided sufficient evidence, direct or circumstantial, to rebut Fulgenzi's affidavit and create a genuine issue of material fact for a jury as to what Fulgenzi actually knew of Cain's protected activity at the time he denied Cain the requested training.

The Court here finds, as was found by the Sixth Circuit in *Mulhall*, that Cain has "failed to produce evidence sufficient to establish that the official[] taking the adverse employment action knew of his protected activity" at the time he took that action.[66] Cain has not produced any direct or circumstantial evidence beyond that of temporal proximity from which a jury could reasonably infer that Fulgenzi, despite his sworn statement to the contrary, actually did know of Cain's April 10 EEO complaint.

His assertion that knowledge by Fulgenzi must be inferred from knowledge allegedly possessed by others, especially Fulgenzi's superiors and co-workers, such as Gehalo, in the Cleveland facility, concerning Cain's EEO complaint, is not a permissible inference as to the

---

[66] *Mulhall*, 287 F.3d at 554.

element of knowledge that is required to establish a retaliation claim.  It is the decision maker, the individual who actually took the adverse action, who must be shown to have had knowledge of protected activity.

Cain has produced no evidence that Fulgenzi would necessarily have been informed of prior EEO complaints by persons in his unit against other Postal Service supervisors, nor that Fulgenzi, who denied Cain's request during his very first day as Cain's supervisor, had even taken custody of employee records that could have contained information concerning prior complaints.  Nor has Cain established, by any evidence of record, that Fulgenzi was actually informed of the April 10 EEO complaint by any person who knew of that complaint.[67]  Without such evidence, which might have formed the basis for direct or circumstantial evidence of knowledge by Fulgenzi of Cain's protected activity, the Court is left with Fulgenzi's sworn statement denying prior knowledge and Cain's attempt to rebut that statement with "conspiratorial theories, not the specific facts required by Federal Rule of Civil Procedure 56."[68]

Since on this record a reasonable jury could not find that Fulgenzi had knowledge of Cain's protected activity when he denied Cain training on May 19, and since such a finding

---

[67] As noted, Cain's deposition testimony of September 20, 2004, specifically stated that he "can't speculate [as to] what his [Fulgenzi's] knowledge was [concerning the April 10 EEO complaint]."  He merely testified that Gehalo and Fulgenzi had contact with one another during this period.  As previously observed, Fulgenzi denied in his sworn affidavit that he had any knowledge of the April 10 complaint prior to July, 2003.  Similarly, Gehalo's uncontested affidavit states that he first actually knew of the April, 2003, complaint in "early 2004."

[68] *Mulhall*, 287 F.3d at 552, citing *Visser*, 924 F.2d at 659.

-14-

is necessary to establish a prima facie case of retaliation, summary judgment on behalf of the Postmaster General and the Postal Service here is appropriate.

## Conclusion

Accordingly, the motion of the Postmaster General for summary judgment against Kenneth Cain is hereby granted and all claims asserted by Cain against the Postmaster General and the Postal Service are hereby ordered dismissed.

IT IS SO ORDERED.


Dated:  October 31, 2006                            s/ William H. Baughman, Jr.
                                                    United States Magistrate Judge

-15-